UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PERMIAN HIGHWAY PIPELINE, LLC | § | |
| AND KINDER MORGAN TEXAS | § | |
| PIPELINE, LLC, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil No. 1:19-cv-00734-RP |
| | § | |
| CITY OF KYLE, TEXAS, | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFFS PERMIAN HIGHWAY PIPELINE, LLC AND KINDER MORGAN
TEXAS PIPELINE, LLC'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.      Introduction ................................................................................................. 1

II.     Facts ............................................................................................................. 1

III.    Legal Standard ............................................................................................ 3

IV.     Argument ..................................................................................................... 3

        A.      The Ordinance clashes with federal and Texas law. ................................. 3

                1.      The Pipeline Safety Act regulates pipeline safety and expressly preempts
                        local law that attempts to regulate pipeline safety. ................................... 3

                2.      Texas law significantly curtails the ability of local governments to regulate
                        oil and gas activities, and expressly preempts local laws that do not meet
                        stringent standards. ................................................................................. 6

        B.      The preempted sections of the Ordinance are void and unenforceable. ................. 8

                1.      Section 8-261 is preempted by federal and Texas law. ............................. 9

                2.      Section 8-250(2) is preempted by federal and Texas law. ...................... 10

                3.      Sections 8-250(3), (5), (6), 8-253(1)–(6), (8), 8-256(1), and 8-256(5) are
                        preempted by federal and Texas law. ...................................................... 10

                4.      Section 8-250(4) is preempted by Texas law. .......................................... 14

                5.      Sections 8-250(7) and 8-250(9) are preempted by federal and Texas law.
                        .............................................................................................................. 14

                6.      Sections 8-250(8), 8-256(2)–(4), and 8-259 are preempted by federal and
                        Texas law. .............................................................................................. 15

                7.      Section 8-250(10) is preempted by federal and Texas law. ...................... 16

                8.      Sections 8-250(11)–(13) are preempted by federal and Texas law. ......... 16

                9.      Section 8-252(2) and (4) are preempted by federal and Texas law. ......... 17

                10.     Section 8-255 is preempted by federal and Texas law. ............................ 17

                11.     Section 8-256(6) is preempted by federal and Texas law. ....................... 18

                12.     Sections 8-257 and 8-262(1)-(2) are preempted by federal and Texas law.
                        .............................................................................................................. 18

13.    Section 8-258(2) is preempted by federal and Texas law.......................... 19

14.    Section 8-260 is preempted by federal and Texas law. ........................... 20

V.    Conclusion & Prayer........................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..............................................................................................3

*BCCA Appeal Grp., Inc. v. City of Houston*,
496 S.W.3d 1 (Tex. 2016)..................................................................................7, 9

*City of Laredo v. Laredo Merchants Ass'n*,
550 S.W.3d 586 (Tex. 2018)..................................................................................6

*Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*,
476 F.3d 326 (5th Cir.2007) ..................................................................................4

*King v. Dogan*,
31 F.3d 344 (5th Cir. 1994) ...................................................................................2

*N. Border Pipeline Co. v. Jackson Cty., Minn.*,
512 F. Supp. 1261 (D. Minn. 1981).....................................................................13

*Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Com'n of N.Y.*,
894 F.2d 571 (2d Cir. 1990)................................................................................10

*Resolution Tr. Corp. v. Starkey*,
41 F.3d 1018 (5th Cir. 1995) .................................................................................2

*Tex. Midstream Gas Servs., L.L.C. v. City of Grand Prairie*,
No. CIV.A.3:08CV1724-D, 2008 WL 5000038 (N.D. Tex. Nov. 25, 2008) .......5, 6

*Tex. Midstream Gas Services, LLC v. City of Grand Prairie*,
608 F.3d 200 (5th Cir. 2010) ............................................................................4, 5

*Tex. Oil & Gas Ass'n v. City of Austin*,
No. A-03-CA-570-SS, 2003 WL 22801971 (W.D. Tex. Oct. 30, 2003)................20

*United Gas Pipeline Co. v. Terrebonne Par. Police Jury*,
319 F. Supp. 1138 (E.D. La. 1970), *aff'd sub nom.*, 445 F.2d 301 (5th Cir.
1971) ......................................................................................................................5

**STATUTES**

42 U.S.C. § 7411(b) ..............................................................................................12

49 U.S.C. § 60102(a)(1).........................................................................................4

49 U.S.C. § 60104(c) ...................................................................................................5

49 U.S.C. § 60105 ........................................................................................................5

49 U.S.C. § 60106(a) ....................................................................................................5

49 U.S.C. §§ 60119–23 .................................................................................................9

TEX. NAT. RES. CODE § 81.051 ....................................................................................8

TEX. NAT. RES. CODE § 81.0523 ..................................................................................8

TEX. UTIL. CODE §§ 15.021, *et seq.* .............................................................................9

TEX. UTIL. CODE § 121.101 ........................................................................................15

TEX. UTIL. CODE § 121.102 ........................................................................................15

TEX. UTIL. CODE § 121.151 ..........................................................................................7

TEX. UTIL. CODE § 121.201 ...........................................................5,13, 16, 17, 18, 20

TEX. UTIL. CODE § 121.202 ...................................................................6, 7, 11, 15

TEX. UTIL. CODE § 121.2015(a) ..................................................................................15

TEX. UTIL. CODE § 181.005(a)(2) ...............................................................................14

TEX. UTIL. CODE § 181.022 ........................................................................................19

TEX. UTIL. CODE § 181.023 ........................................................................................19

**OTHER AUTHORITIES**

40 C.F.R. §§ 60.5360 *et seq.* ......................................................................................12

49 C.F.R. §§ 190.201, *et. seq.* .....................................................................................9

49 C.F.R. §§ 190.291, *et. seq.* .....................................................................................9

49 CFR § 192.111 ........................................................................................................11

49 CFR § 192.317 ........................................................................................................18

49 CFR § 192.325 ........................................................................................................12

49 CFR § 192.327 ........................................................................................................12

49 CFR § 192.605 ........................................................................................................18

49 CFR § 192.613 ...................................................................................................13

49 CFR § 192.614 ...................................................................................................16

49 CFR § 192.615 ...................................................................................................18

49 CFR § 192.707 ...................................................................................................20

49 CFR § 192.903 ...................................................................................................17

16 Tex. Admin. Code Ch. 18 ..................................................................................16

16 Tex. Admin. Code Ch. 101 ................................................................................12

16 Tex. Admin. Code § 3.1 .............................................................................15, 17

16 Tex. Admin. Code § 3.70 ...................................................................................13

16 Tex. Admin. Code § 8.1 ..........................................................5, 12, 13, 17, 18, 20

16 Tex. Admin. Code § 8.101 .................................................................................18

16 Tex. Admin. Code § 8.115 ...........................................................................11, 15

16 Tex. Admin. Code § 8.205 .................................................................................18

16 Tex. Admin. Code § 8.210 ...........................................................................17, 18

16 Tex. Admin. Code § 8.235 .................................................................................16

Fed. R. Civ. P. 56 ................................................................................................1, 3

Tex. Const. art. XI, § 5(a) .....................................................................................7, 14

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs Permian Highway Pipeline, LLC ("PHP") and Kinder Morgan Texas Pipeline, LLC ("KMTP," and collectively, "Plaintiffs") file this Motion for Summary Judgment.

## I.     INTRODUCTION

This action arises out of the second attempt by Defendant City of Kyle, Texas ("Defendant" or "City") to interfere impermissibly with the construction and operation of the Permian Highway Pipeline ("Pipeline").  Defendant first sued Plaintiffs, the Railroad Commission of Texas ("Railroad Commission"), and several Railroad Commission officials in state district court in Travis County, seeking a declaration that the Texas regulatory scheme governing gas utilities is unconstitutional and an injunction to stop the construction of the Pipeline.  After losing on both requests as a matter of law in that court, Defendant continued with its plan to block the Pipeline and thereby harm Plaintiffs when it hastily passed an ordinance[1] ("Ordinance") to impose unlawfully upon Plaintiffs a host of safety requirements related to the construction and operation of the Pipeline and subject Plaintiffs to criminal penalties if they do not comply.

The Ordinance cannot stand.  As set forth below, it is unconstitutional and preempted by both federal and Texas law.  Plaintiffs need these issues decided promptly to avoid additional delay in the construction of the Pipeline.  Plaintiffs therefore seek a final judgment declaring the Ordinance void and unenforceable as a matter of law.

## II.     FACTS

The Pipeline, which is expected to be in service by late 2020, will be a forty-two-inch buried natural gas pipeline designed to transport up to 2.1 billion cubic feet per day of natural

---

[1] An executed copy of the Ordinance is attached as Exhibit A to the Affidavit of Bill Kroger, which is attached to this Motion as Exhibit 1.

gas approximately 430 miles from the Waha Hub in Reeves County to the Katy Hub near Houston. Compl. ¶ 10.[2]  PHP is the owner and economic operator of the Pipeline.  *Id.* ¶ 3.  KMTP is the operator of the Pipeline.  *Id.* ¶ 4.

On April 22, 2019, Defendant and others sued Plaintiffs, the Railroad Commission, and several Railroad Commission officials in state district court in Travis County, seeking a declaration that the Texas regulatory scheme governing gas utilities is unconstitutional and an injunction to stop the construction of the Pipeline.  *Id.* ¶ 36.  On May 28 and 29, the Honorable Judge Lora J. Livingston presided over a two-day evidentiary hearing.  *Id.*  On June 25, Judge Livingston circulated a letter announcing her ruling and, on July 5, Judge Livingston signed a Final Judgment that dismissed the Railroad Commission with prejudice for lack of jurisdiction, rendered judgment for PHP and KMTP, and denied the request for temporary injunction as moot.  *Id.*, Exs. C, D.

During the litigation in Travis County, Defendant was advancing the Ordinance as a separate means to block the Pipeline if its lawsuit was unsuccessful.  *See id.* ¶ 37.  At a special meeting on May 14, 2019, Defendant's City Council passed the Ordinance on first reading.  *Id.* ¶ 37, Ex. E.  Approximately six weeks later, and after Judge Livingston sent her letter ruling, Defendant's City Council gave final approval to the Ordinance on second reading at a regular meeting on July 2, 2019.  *Id.*, Ex. F.  The Ordinance declares *on its face* that its purpose is to promote "risk reduction" by regulating oil and gas pipeline activities in order to "protect the public health, safety, and welfare."  Ex. 1, Ex. A.  Accordingly, the Ordinance subjects the construction and operation of the Pipeline to what are undeniably a variety of safety regulations that have been

---

[2] Plaintiffs' Original Complaint (Dkt. No. 1, "Complaint") is attached as Exhibit 2.  "A verified complaint can be considered as summary judgment evidence."  *See Resolution Tr. Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)).

preempted by either federal or Texas law, or both.

On July 22, 2019, Plaintiffs filed their Complaint in this case, seeking preliminary and permanent injunctive relief and three declarations focusing on: (1) federal and state preemption, (2) violations of the Commerce Clause of the U.S. Constitution,[3] and (3) violations of the Home Rule City provisions of the Texas Constitution.  Compl. ¶¶ 42–61.  Plaintiffs also filed their Application for Preliminary Injunction (Dkt. No. 2), which is set for hearing on September 17 (Dkt. No. 9).  Plaintiffs seek to have this Motion heard and decided at the same hearing.

### III.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

### IV.    ARGUMENT

**A.    The Ordinance clashes with federal and Texas law.**

The Pipeline is subject to federal and Texas laws and related regulations that apply to underground oil and gas activities as well as to the safety of pipeline construction and operations.  Those laws and regulations preempt local laws and regulations that attempt to do the same.  Here, the Ordinance does so *on its face*.  The regulations enacted by it are entitled "Building Regulations and Procedures Promoting Risk Reductions of Operations and Development Near Pipelines."

**1.    The Pipeline Safety Act regulates pipeline safety and expressly preempts local law that attempts to regulate pipeline safety.**

"Congress may preempt state law in three ways.  It may do so by clearly and expressly articulating its desire to preempt an area.  Congress may also preempt state law implicitly

---

[3] Plaintiffs must necessarily prevail on their request for declaratory judgment based on violations of the Commerce Clause of the U.S. Constitution if the Court grants this Motion.  Accordingly, if the Court grants this Motion, Plaintiffs will present a fee application for the Court's approval.

by either 'directly conflicting with it' (conflict preemption) or by 'occupying a field so pervasively as to naturally exclude it' (field preemption)." *Tex. Midstream Gas Services, LLC v. City of Grand Prairie*, 608 F.3d 200, 210 (5th Cir. 2010) (quoting *Empacadora de Carnes de Fresnillo, S.A. de C.V. v. Curry*, 476 F.3d 326, 333 (5th Cir. 2007)).  All three types of federal preemption are implicated by the Ordinance and asserted in this Motion.

Congress enacted the Pipeline Safety Act, 49 U.S.C. §§ 60101 *et seq.* ("PSA"), in 1994 to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation."  49 U.S.C. § 60102(a)(1).  The PSA requires the Secretary of Transportation ("Secretary") to prescribe minimum safety standards for pipeline transportation that apply to owners and operators of pipelines, and may apply to the design, installation, inspection, emergency plans and procedures, testing, construction, extension, operation, replacement, and maintenance of pipelines.  *Id.* § 60102(a)(2); *see also* Compl. ¶ 14 (providing examples of applicable PSA regulations).

The PSA creates a broad federal regulatory umbrella that allows the Secretary to prescribe safety standards for virtually every aspect of the pipeline transportation of natural gas within the United States.  The breadth and depth of the PSA demonstrates the intent of Congress to preempt the field with respect to safety of any pipeline or pipeline facility affecting interstate commerce.  In addition to occupying the field, the PSA also *expressly* preempts unauthorized municipal regulation of pipeline safety in Texas.  *See* 49 U.S.C. §§ 60104(c), 60106(a).  The federal preemption applies to both interstate and intrastate pipelines.

> The PSA contains an express preemption provision that prohibits state authorities from adopting or enforcing safety standards for interstate pipeline facilities or interstate pipeline transportation.  It also prohibits state authorities from adopting or enforcing safety standards for intrastate pipeline facilities and intrastate pipeline

4

transportation unless the state authority is either certified by [the Secretary] or has an agreement with [the Secretary].

*Tex. Midstream Gas Servs., L.L.C. v. City of Grand Prairie*, No. CIV.A.3:08CV1724-D, 2008 WL 5000038, at *5 (N.D. Tex. Nov. 25, 2008) (citing 49 U.S.C. §§ 60104(c), 60106(a)), *aff'd sub nom.*, 608 F.3d 200 (5th Cir. 2010).  Courts have long held that the PSA "preempts the entire domain of pipeline safety."  *Id.* at 8; *see also* Compl. ¶ 16; *United Gas Pipeline Co. v. Terrebonne Par. Police Jury*, 319 F. Supp. 1138, 1141 (E.D. La. 1970) (holding state statute invalid where "every section . . . relate[d] to the construction, installation or operation of" pipeline), *aff'd sub nom.*, 445 F.2d 301 (5th Cir. 1971).

The PSA also authorizes state authorities to regulate intrastate pipeline safety if they submit a certification to or have an agreement with the Secretary.  *See* 49 U.S.C. § 60105. The Texas Legislature ("Legislature") has delegated to the Railroad Commission the authority to seek certification under the PSA to regulate pipeline safety in Texas.  TEX. UTIL. CODE § 121.201(a)(6)–(8).  That delegation is *exclusive*.  *Id.* § 121.201(b)(2).  The Railroad Commission has sought and obtained such certification.  *See* U.S. Dept. of Transportation, Pipeline and Hazardous Materials Safety Administration, *Guidelines for States Participating in the Pipeline Safety Program*, Appendix F (State Program Certification/Agreement Status) (Revised January 2019) (hereinafter, "Guidelines").  Texas law grants the Railroad Commission the power to regulate pipeline safety to the fullest degree possible in accordance with the PSA.  TEX. UTIL. CODE § 121.201(b)(1), (2).  As the certified state authority, the Railroad Commission has adopted safety regulations that mirror and build upon the PSA's regulations.  *See* 16 TEX. ADMIN. CODE § 8.1(b) (adopting by reference federal minimum safety standards); *see also* Compl. ¶ 18 (noting requirements for all pipelines and requirements for natural gas pipelines in Texas).

In contrast, municipalities like Defendant are *expressly* prohibited by the PSA from adopting or enforcing any ordinance that establishes a safety standard or practice relating to pipeline transportation.  Defendant is not authorized to seek certification under the PSA, *see Tex. Midstream I*, 2008 WL 5000038, at *5 n.5 (recognizing that Texas law "prohibits municipalities from regulating the safety of pipeline facilities") (citing TEX. UTIL. CODE § 121.202(a)), and Defendant is in fact *not* so certified, *see* Guidelines, Appendix F.  Moreover, while the Legislature has exercised its right under the PSA to delegate pipeline safety regulation to the Railroad Commission, it has also exercised its rights under the PSA to expressly preempt such regulation by local authorities.  TEX. UTIL. CODE § 121.202(a) ("A municipality or a county may not adopt or enforce an ordinance that establishes a safety standard or practice applicable to a facility that is regulated under this subchapter, another state law, or a federal law."); *see also Tex. Midstream I*, 2008 WL 5000038, at *5 n.5 (holding ordinance was "preempted by the PSA as a safety standard" and "also preempted under state law") (citing TEX. UTIL. CODE § 121.202(a)).

2.       **Texas law significantly curtails the ability of local governments to regulate oil and gas activities, and expressly preempts local laws that do not meet stringent standards.**

In addition to federal preemption, the Legislature also can preempt local regulation. "While home-rule cities have all power not denied by the Constitution or state law, and thus need not look to the Legislature for grants of authority, the Legislature can limit or withdraw that power by general law.  Deciding when it is inappropriate to have a patchwork of local regulations is the Legislature's prerogative.  The question is not whether the Legislature *can* preempt a local regulation . . . but whether it *has*."  *City of Laredo v. Laredo Merchants Ass'n*, 550 S.W.3d 586, 592–93 (Tex. 2018) (emphasis in original).

The Texas Constitution mandates that no city ordinance "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the

Legislature of this State." TEX. CONST. ART. XI, § 5(a). "Therefore, a home-rule city's ordinance is unenforceable to the extent that it is inconsistent with the state statute preempting that particular subject matter." *BCCA Appeal Grp., Inc. v. City of Houston*, 496 S.W.3d 1, 7 (Tex. 2016). The "critical inquiry in determining whether an ordinance is preempted is whether the Legislature expressed its preemptive intent through clear and unmistakable language." *Id.* at 8.

In the Texas Utilities Code, the Legislature provided that the Railroad Commission shall: (1) "establish fair and equitable rules for the full control and supervision of the pipelines subject to this chapter and all of their holdings pertaining to the gas business in all of their relations to the public, as the [R]ailroad [C]ommission determines to be proper" and (2) "prescribe and enforce rules for the government and control of pipelines subject to this chapter in respect to their pipelines and producing, receiving, transporting, and distributing facilities." TEX. UTIL. CODE §§ 121.151(2), (4). The Railroad Commission has done so. Additionally, the Legislature may "prescribe or adopt safety standards for the transportation of gas and for gas pipeline facilities," and "take any other requisite action in accordance with [the PSA] and its subsequent amendments or a succeeding law." *Id.* §§ 121.201(a)(1), (7). The Legislature has done so to the exclusion of municipalities such as Defendant and counties. Indeed, the very same statute provides: "A municipality or a county may not adopt or enforce an ordinance that establishes a safety standard or practice applicable to a facility that is regulated under [the PSA]." *Id.* § 121.202(a).

These provisions of the Texas Utilities Code preempting municipal regulation of gas pipeline safety have been established for decades. More recently, the Legislature passed yet another statute, codified in the Texas Natural Resources Code, unmistakably conferring upon the State "exclusive jurisdiction" over "oil and gas operations," which includes the "transportation of oil and gas."

(b) **An oil and gas operation is subject to the exclusive jurisdiction of this state**. Except as provided by Subsection (c), a municipality or other political subdivision may not enact or enforce an ordinance or other measure, or an amendment or revision of an ordinance or other measure, that bans, limits, or otherwise regulates an oil and gas operation within the boundaries or extraterritorial jurisdiction of the municipality or political subdivision.

(c) **The authority of a municipality or other political subdivision to regulate an oil and gas operation is expressly preempted**, except that a municipality may enact, amend, or enforce an ordinance or other measure that: (1) **regulates only aboveground activity** related to an oil and gas operation that occurs at or above the surface of the ground, including a regulation governing fire and emergency response, traffic, lights, or noise, or imposing notice or reasonable setback requirements; (2) is commercially reasonable; (3) does not effectively prohibit an oil and gas operation conducted by a reasonably prudent operator; **and** (4) **is not otherwise preempted by state or federal law**.

TEX. NAT. RES. CODE § 81.0523(a)(2), (b), (c) (emphases added).

The provisions of Chapter 121 of the Texas Utilities Code apply, because Plaintiffs are each a "gas utility" as defined in section 121.001 of the Texas Utilities Code. Section 81.0523(a) of the Texas Natural Resources Code applies, because Plaintiffs also own or operate the Pipeline. *See* TEX. NAT. RES. CODE § 81.051(a)(3), (b). Thus, the Ordinance, which purports to regulate the safety of pipeline construction, operations, and other activities, is preempted and violates the Texas Constitution, Texas Utilities Code, and Texas Natural Resources Code, in addition to violating federal law, including the U.S. Constitution and the PSA.[4]

**B.      The preempted sections of the Ordinance are void and unenforceable.**

Federal and Texas law expressly preempt many sections of the Ordinance.[5] To the extent that certain sections might not be expressly preempted, they are either conflict or field

---

[4] The Pipeline will run through 16 counties and numerous municipalities. Compl. ¶ 10. Each county and municipality cannot pass its own pipeline construction, operation, and safety regulations, thereby subjecting the Pipeline and other pipelines to a patchwork of local regulations throughout the state that will unduly impede and disrupt interstate commerce.

[5] A non-exhaustive chart setting forth statutes and regulations that preempt the following sections of the Ordinance is attached as Exhibit 3.

preempted by federal law, or preempted by Texas law because they are inconsistent with Texas law. Consequently, the vast majority of the Ordinance is unconstitutional, and all of the preempted sections of the Ordinance are void and unenforceable as a matter of law.

> **1.    Section 8-261 is preempted by federal and Texas law.**

Section 8-261(1) makes "[a] person . . . criminally responsible for a violation of [the Ordinance] if the person: (a) refuses the inspector of the city access to an operation site or a pipeline; (b) fails to comply with an inspector's orders; or (c) fails to comply with any provision of" the Ordinance. Section 8-261(2) further provides:

> A person who knowingly violates any provision of this article is guilty of a separate offense for each day or portion of a day during which the violation is continued. Each fine is punishable by a fine of $2,000. This fine shall be doubled for the second conviction of the same offense within any 24-month period and trebled for the third and any subsequent convictions of the same offense within any 24-month period.

Section 8-261 is expressly preempted by federal and Texas law to the extent that it attaches to other sections of the Ordinance that attempt to establish a safety standard or practice. The exclusive and comprehensive statutory scheme governing pipeline safety leaves no room for Defendant's criminal penalties and fines. *See, e.g.*, 49 U.S.C. §§ 60119–23 (authorizing judicial review, civil actions, civil and criminal penalties, and other enforcement options), 49 C.F.R. §§ 190.201, *et. seq.* (establishing enforcement procedures for pipeline safety), 49 C.F.R. §§ 190.291, *et. seq.* (providing criminal penalties for violations of pipeline safety regulations).

Section 8-261 is also expressly preempted by and in conflict with Texas law, which also has its own enforcement options and penalties. *See, e.g.*, TEX. UTIL. CODE §§ 15.021, *et seq.* (providing enforcement process and related civil and criminal penalties applicable to all utilities). *BCCA Appeal Group* is instructive. There, the Texas Supreme Court held enforcement provisions of a city ordinance were preempted by "Chapter 7 of the Water Code" and "inconsistent with the

statutory requirements for criminal prosecution and the statutory scheme providing other enforcement options." 496 S.W.3d at 14–15.  The same is true here; the Ordinance's enforcement provisions and penalties are expressly preempted by and in conflict with the federal and state statutory schemes.

### 2. Section 8-250(2) is preempted by federal and Texas law.

Section 8-250(2) provides:

> As determined in the sole, but reasonable discretion of the city, Natural Gas Transmission Pipelines may not interfere with or damage existing utilities, including but not limited to: water, sewer or gas lines, storm drains, electric lines or the facilities of any public utilities located in public rights-of-way, utility easements or other city-owned property or in private residential areas.

Section 8-250(2) is expressly preempted by federal and Texas law because it regulates the safety of pipeline construction and operations.  It is further expressly preempted by Texas law to the extent it regulates belowground oil and gas activities.  Thus, federal and Texas law leave no room for Defendant to exercise discretion, much less "sole" discretion, to regulate the risk that a pipeline may be interfering with or damaging existing utilities.  Moreover, courts have recognized that such discretion frustrates the regulatory scheme governing pipelines.  *See, e.g.*, *Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Com'n of N.Y.*, 894 F.2d 571, 576–77 (2d Cir. 1990) (holding that state regulations requiring "site-specific environmental review" of pipelines were preempted by federal law, noting that "[s]uch proceedings would certainly delay and might well, by the imposition of additional requirements or prohibitions, prevent the construction of federally approved interstate gas facilities").

### 3. Sections 8-250(3), (5), (6), 8-253(1)–(6), (8), 8-256(1), and 8-256(5) are preempted by federal and Texas law.

Section 8-250(3) provides that a "Pipeline Operator shall be required to comply

with pipeline permit requirements in Subsection 8-253."[6] Sections 8-253(1)–(6), (8) set forth various requirements to obtain a permit from Defendant, including section 8-253(2), which like 8-250(5), 8-256(1), and 8-256(5), requires compliance with certain existing federal and state laws and regulations, and section 8-253(4), which provides pipeline depth requirements similar to those in section 8-250(6).  These sections are all preempted by federal and Texas law.  They either establish impermissibly new municipal safety regulations or they assert impermissibly municipal authority to determine and regulate compliance with existing state and federal regulations.

Section 8-253(1) requires, "[p]rior to the construction and/or operation of" a pipeline, a "certification from a professional engineer . . . that the design and installation of the [pipeline] meet[s] all state and federal requirements."  This section is expressly preempted by federal law and related regulations adopted by the Railroad Commission as it both imposes a new municipal safety standard and implies the municipality has enforcement and oversight authority over Railroad Commission regulations.  *See* 16 TEX. ADMIN. CODE § 8.115 (New Construction Commencement Report).  It is further expressly preempted by Texas law as a prohibited safety standard or practice.  TEX. UTIL. CODE § 121.202(a).

Section 8-253(2) provides pipelines:

> within the city limits or extraterritorial jurisdiction shall be constructed in accordance with the ordinances, utilize best management practices, and be designed and constructed to the latest standards mandated by the United States Department of Transportation (DOT) and Texas Railroad Commission for pipelines operating within a class 3 location in accordance with 49 CFR § 192.111, as amended.

Sections 8-250(5), 8-256(1), and 8-256(5) similarly require compliance with certain construction and operation requirements adopted by the State.  All of these sections are expressly preempted by

---

[6] In addition to the portions of Section 8-253 being challenged in this Motion, Plaintiffs are also challenging the fees set forth for such permits at the Railroad Commission directly.

federal and Texas law because they assert impermissibly municipal authority to review and determine compliance with existing federal and state safety standards and practices. Moreover, the Legislature and DOT have already conferred upon the Railroad Commission exclusive jurisdiction over these issues, and the Railroad Commission has adopted such regulations, *see* 16 TEX. ADMIN. CODE § 8.1(b), leaving no room for Defendant's regulation in this area.

Section 8-253(3) provides:

> Compression and gas lift facilities shall be required to comply with all state and/or federal regulations relative to emissions standards and air permitting compliance requirements for exhaust emissions, fugitive emissions, greenhouse gas emissions, and all other applicable air quality standards associated with natural gas compression and gas lift facilities. Best management practices to meet all permitting requirements and control emissions generated at compression and gas lift facilities, and associated equipment, shall be required and submitted to the city for approval. Compression facilities shall be equipped with (a) Gas and flame detection equipment designed to shut down the operations if a gas leak or flame is detected at the facility; (b) High/low pressure automatic cutoff switch; and (c) Sound control enclosures to reduce compressor noise and vibrations.

This section is expressly preempted by federal and Texas law, both of which already require compliance with similar safety standards and practices. *See* 42 U.S.C. § 7411(b); 40 C.F.R. §§ 60.5360, *et seq.*; 16 TEX. ADMIN. CODE CH. 101. Moreover, as set forth above, federal and Texas law prohibit municipalities from enacting their own pipeline safety standards and practices.

Section 8-253(4) requires a pipeline to maintain a minimum depth of ten (10) feet below the surface. Section 8-250(6) similarly requires a pipeline in a public right-of-way to be at least thirteen (13) feet deep. These sections are expressly preempted by federal and Texas law for multiple reasons, including that they establish unlawfully municipal safety standards and practices, claim municipal authority to determine compliance with existing federal and state regulations, and regulate belowground oil and gas activities. Further, both the federal government and Legislature have already addressed the issue of pipeline depth, *see* 49 CFR §§ 192.325, 192.327 (providing for different depths up to four (4) feet for pipelines depending on the type of land, soil, and rock

12

the pipeline crosses), TEX. UTIL. CODE § 121.201 (providing the Railroad Commission may adopt rules regarding pipeline safety), and the Railroad Commission has adopted the same regulations, *see* 16 TEX. ADMIN. CODE § 8.1.  Moreover, courts have recognized that the federal government's authority over pipeline safety is pervasive and political subdivisions may not regulate pipeline depth.  *See N. Border Pipeline Co. v. Jackson Cty., Minn.*, 512 F. Supp. 1261, 1263–64 (D. Minn. 1981) (granting motion for summary judgment and "enjoining the enforcement of the six foot cover requirement" for gas pipeline).

Section 8-253(5) provides that a pipeline operator shall install an automated pressure monitoring system or put in place a 24-hour system to monitor the pipeline within city limits.  This section is expressly preempted by federal and Texas law because it establishes safety standards and practices.  Moreover, both the federal government and Legislature have already addressed the issue of pipeline monitoring, *see* 49 CFR §§ 192.613 (requiring pipeline operators to have surveillance system in place to appropriately monitor leaks and other issues), 192.705, 192.706; TEX. UTIL. CODE § 121.201 (providing that Railroad Commission may adopt rules regarding pipeline safety), and the Railroad Commission has adopted the same regulations, *see* 16 TEX. ADMIN. CODE § 8.1, leaving no room for Defendant's regulation in this area.

Section 8-253(8) requires a pipeline operator to submit a pipeline permit application to Defendant.  Section 8-253(6) further provides: "Review by the City for all proposed Natural Gas Transmission Pipelines through private residential areas shall be required prior to the issuance of a pipeline permit for the commencement of Pipeline construction."  These sections are expressly preempted by federal and Texas law for the reasons stated above and to the extent they regulate underground oil and gas activities.  Moreover, the Railroad Commission has already established a permitting process for pipelines in the state.  *See* 16 TEX. ADMIN. CODE § 3.70.

13

### 4. Section 8-250(4) is preempted by Texas law.

Section 8-250(4) provides:

The Pipeline Operator shall be responsible to grade, level and restore the property affected by pipeline construction to the same surface condition, as nearly practicable, as existed before operations were first commenced within thirty (30) days after completion of the pipeline.

The Texas Constitution prohibits a city ordinance that is "inconsistent with . . . the general laws enacted by the Legislature of this State." TEX. CONST. ART. XI, § 5(a). Here, section 8-250(4) is expressly preempted by Texas law and in direct conflict with section 181.005(a)(2) of the Texas Utilities Code, which already addresses the extent to which land must be restored following construction of a pipeline. TEX. UTIL. CODE § 181.005(a)(2) (requiring a public right-of-way and its facilities be "promptly restored to their former condition of usefulness"). Thus, Texas law leaves no room for Defendant's regulation in this area.

### 5. Sections 8-250(7) and 8-250(9) are preempted by federal and Texas law.

Section 8-250(7) provides:

At least sixty (60) days prior to finalization of any Natural Gas Transmission Pipeline construction plans, the Pipeline Operator and/or contractor shall provide the city with the construction plans for all Pipeline construction within the city to ensure that all current and future planned roadways have the Pipeline designed to the above-referenced depth.

Section 8-250(9) provides:

At the time the required Natural Gas Transmission Pipeline records are submitted to the Railroad Commission of Texas, the Pipeline Operator shall provide the city the following information, including GPS information sufficient to locate the Pipelines in the future, including the beginning and end points of the Pipeline and sufficient points in between the Pipeline route and the depth of cover information.

These sections are expressly preempted by federal and Texas law because they establish safety standards and practices and also regulate underground oil and gas activities. Moreover, the Railroad Commission has already adopted regulations requiring the provision of

certain construction plans thirty (30) days prior to the finalization of a pipeline project.  *See* 16 TEX. ADMIN. CODE § 8.115.  The Legislature has also conferred upon the Railroad Commission jurisdiction over the submission of information pertaining to a pipeline, *see* TEX. UTIL. CODE §§ 121.101, 121.102, and the Railroad Commission has adopted related regulations, *see* 16 TEX. ADMIN. CODE § 3.1 (requiring provision of various categories of pipeline information).[7]  Thus, federal and Texas law leave no room for Defendant's regulation in this area.

> **6.      Sections 8-250(8), 8-256(2)–(4), and 8-259 are preempted by federal and Texas law.**

Section 8-250(8) provides:

> At least ten (10) days prior to the commencement of any Pipeline construction, the Pipeline Operator shall give written mailed notice to all residents, tenants and property owners that are located adjacent to the proposed Pipeline.  The mailing shall include the Pipeline Operator's publication on Natural Gas Transmission Pipeline safety.

Sections 8-256(2)–(4) similarly require a pipeline operator to send notice to certain persons in the event of non-emergency maintenance and repairs.  Section 8-259 further requires a pipeline operator to provide certain public awareness information annually in both English and Spanish.

These sections are expressly preempted by federal and Texas law because they establish safety standards and practices.  Further, the Legislature has already established requirements for notice and safety information to nearby residents, *see* TEX. UTIL. CODE § 121.2015(a) (conferring authority for public education and awareness regarding pipelines upon

---

[7] While there is a limited exception in state law allowing municipalities to request certain information about pipelines, *see* TEX. UTIL. CODE § 121.202(b)(2)(A), such municipal regulation must not conflict with state law and is limited to information related to locating pipelines over or along public streets and private residential areas within the boundaries of the municipality.  Section 8-250(9) exceeds this exception and conflicts with state law by, among other things, requiring information about all pipelines regardless of location and requesting information in a non-designated format that is compatible with Defendant's GIS system.

the Railroad Commission), and the Railroad Commission has adopted related regulations, *see* 16 TEX. ADMIN. CODE § 8.235 (providing specific requirements with respect to timing, form, and recipients of notice regarding pipelines), leaving no room for Defendant's regulation in this area.

### 7.   Section 8-250(10) is preempted by federal and Texas law.

Section 8-250(10) provides:

> A Pipeline Operator that transports Natural Gas through a Natural Gas Transmission Pipeline located in the city shall be a member in good standing with the one call system or other approved excavation monitoring system as required by state law.  The Pipeline Operator that transports Natural Gas through a Pipeline shall contract for service with the selected underground utility coordinating system for a minimum of five years unless there is an agreement to change to an alternate system between the city and the Pipeline Operator.  Said Pipeline Operator shall maintain such services without interruption for the life of the Pipeline permit and as required under this section.

This section is expressly preempted by federal and Texas law because it establishes safety standards and practices.  Further, the federal government and Legislature already require an excavation monitoring system, *see* 49 CFR § 192.614 (requiring pipelines to have excavation monitoring systems), TEX. UTIL. CODE § 121.201 (providing the Railroad Commission may adopt rules regarding pipeline safety), and the Railroad Commission has adopted related regulations, *see* 16 TEX. ADMIN. CODE CH. 18 (establishing an underground pipeline damage prevention program), leaving no room for Defendant's regulation in this area.

### 8.   Sections 8-250(11)–(13) are preempted by federal and Texas law.

Section 8-250(11) requires a pipeline operator to provide contact information to Defendant on an annual basis.  Sections 8-250(12)–(13) likewise require the submission of certain reports, including safety reports, to Defendant.  These sections are expressly preempted by federal and Texas law because they establish safety standards and practices.  Further, the Legislature has already conferred upon the Railroad Commission jurisdiction over safety standards and the collection of related information for pipelines, *see* TEX. UTIL. CODE § 121.201 (providing the

Railroad Commission may adopt rules regarding pipeline safety and may require operators to provide information), and the Railroad Commission has adopted related regulations, *see* 16 TEX. ADMIN. CODE § 3.1 (requiring provision of contact information and general information related to a pipeline); 16 TEX. ADMIN. CODE § 8.210(b) (requiring annual provision of certain safety reports), leaving no room for Defendant's regulation in this area.

        **9.**      **Section 8-252(2) and (4) are preempted by federal and Texas law.**

        Sections 8-252(2) and (4) provide that, in furtherance of risk reduction, a pipeline operator must review and respond to notices from developers proposing to construct within 660 feet of the centerline of a pipeline. These sections are expressly preempted by federal and Texas law because they establish safety standards and practices. In addition to the time and cost associated with reviewing and responding to these notices, a pipeline operator's involvement in this process could potentially subject the pipeline operator to liability associated with the developer's actions independent of the pipeline. Moreover, both the federal government and Legislature have already addressed concerns about development near a pipeline, *see* 49 CFR §§ 192.903 (establishing process for identifying high consequence areas near pipelines), 192.907 (requiring development of management plan), 192.911 (specifying that management plans must take into account any high consequence areas); TEX. UTIL. CODE § 121.201 (providing that the Railroad Commission may adopt rules regarding pipeline safety), and the Railroad Commission has adopted the same regulations, *see* 16 TEX. ADMIN. CODE § 8.1, leaving no room for Defendant's regulation in this area.

        **10.**     **Section 8-255 is preempted by federal and Texas law.**

        Section 8-255 requires a pipeline operator to maintain certain procedures for emergency situations and imposes reporting requirements in the event of an emergency. These sections are expressly preempted by federal and Texas law because they establish safety standards

17

and practices.  Moreover, both the federal government and Legislature have already addressed the issue of pipeline emergencies, *see* 49 CFR §§ 192.605, 192.615 (requiring emergency response plan, including "[a]ctions directed toward protecting people first and then property"); TEX. UTIL. CODE § 121.201 (providing that the Railroad Commission may adopt rules regarding pipeline safety), and the Railroad Commission has adopted related regulations, *see* 16 TEX. ADMIN. CODE §§ 8.1, 8.101, 8.205, 8.210(a) (requiring provision of emergency reports to the Railroad Commission).  Federal and Texas law are clear with respect to emergency procedures and leave no room for Defendant's regulation in this area.

### 11.     Section 8-256(6) is preempted by federal and Texas law.

Section 8-256(6) provides:

> A pipeline operator shall keep protected and painted all pipeline risers and all appurtenances related to the pipeline, including compressor stations or other facilities which are composed of materials which are generally protected or painted. Such operator shall repaint all such items at sufficiently frequent intervals to maintain same in good condition.  It shall be a violation of this article for any pipeline operator to permit any pipeline riser and/or appurtenances related to pipeline construction and operations to be in a state of disrepair or to have chipped, peeling or unpainted portions.

This section is expressly preempted by federal and Texas law because it establishes safety standards and practices.  Further, both the federal government and Legislature have already addressed the issue of pipeline risers, *see* 49 CFR § 192.317 (providing that an operator shall protect lines from washouts and floods and protect pipe risers in navigable waters); TEX. UTIL. CODE § 121.201 (providing the Railroad Commission may adopt rules regarding pipeline safety), and the Railroad Commission has adopted the same regulations, *see* 16 TEX. ADMIN. CODE § 8.1. Thus, federal and Texas law leave no room for Defendant's regulation in this area.

### 12.     Sections 8-257 and 8-262(1)-(2) are preempted by federal and Texas law.

Section 8-257 provides:

Nothing in this subsection grants permission for the use of any street, public rights-of-way, utility easements or city-owned property. In the event a Pipeline Operator wishes to undertake any Natural Gas Transmission Pipeline construction on, over, under, along or across any public rights-of-way, utility easements or other city-owned property, the Pipeline Operator shall apply for and execute a written agreement with the city governing the terms and conditions for use; obtain all required permits and comply with any other applicable provisions of the city code.

Section 8-262(1) provides:

In the event a Natural Gas Transmission Pipeline pipeline [*sic*] is placed within any public right-of-way under the jurisdiction of the town, the owner/operator shall comply with the right-of-way use regulations as provided in this City's Code of Ordinance and obtain an appropriate franchise, permit or authorization for the use of such right-of-way.

Section 8-262(2) further provides: "To the extent that the provisions of this article conflict with the city's right-of-way use ordinance, this article shall apply."

These sections are expressly preempted by federal and Texas law because they establish safety standards and practices and also regulate underground oil and gas activities. Moreover, the Legislature has already addressed this issue in the Texas Utilities Code. *See* TEX. UTIL. CODE § 181.022 (providing that a gas utility has the right to lay lines in public rights-of-way).[8] Thus, federal and Texas law leave no room for Defendant's regulation in this area.

### 13.    Section 8-258(2) is preempted by federal and Texas law.

Section 8-258(2) provides:

It is the joint and several responsibility of the owner and the pipeline operator of any and all pipeline to maintain the markers in accordance with this article. The location of all new or replacement pipe and pipelines shall be marked by the owner(s) thereof or by the person installing or operating such pipelines . . .

---

[8] This statute is limited by section 181.023 of the Texas Utilities Code, which provides a utility may exercise such right in a municipality with the consent of the municipality and subject to its direction. Here, the Ordinance surpasses Defendant's rights under the Texas Utilities Code, as it does not just provide a consent-and-direction right; rather, it requires a pipeline operator to enter into an agreement with Defendant, which could impose greater requirements or subject an operator to greater liability than contemplated or permitted by the Legislature.

This section is expressly preempted by federal and Texas law because it establishes safety standards and practices. Further, both the federal government and Legislature have already addressed the issue of pipeline markers and signs, *see* 49 CFR § 192.707 (establishing marking requirements for natural gas pipelines); TEX. UTIL. CODE § 121.201 (providing that the Railroad Commission may adopt rules regarding pipeline safety), and the Railroad Commission has adopted the same regulations, *see* 16 TEX. ADMIN. CODE § 8.1, leaving no room for Defendant's regulation in this area.

### 14.    Section 8-260 is preempted by federal and Texas law.

Section 8-260 requires a pipeline to (1) "carry public liability insurance" and "property damage insurance" in certain minimum amounts, (2) "provide and maintain . . . minimum limits" for worker's compensation, employer liability, commercial general liability, automobile liability, and umbrella liability insurance, and (3) "submit to the city a performance bond or irrevocable letter of credit approved as to form by the city attorney in the amount of $100,000." Section 8-260 is expressly preempted by federal and Texas law. Indeed, courts have held that insurance requirements for pipelines like those found in section 8-260 are expressly preempted. *See, e.g.*, *Tex. Oil & Gas Ass'n v. City of Austin*, No. A-03-CA-570-SS, 2003 WL 22801971, at *1 (W.D. Tex. Oct. 30, 2003) (granting injunctive relief enjoining enforcement of ordinance with similar insurance requirements "because the regulation of the operation, installation and relocation of pipelines is preempted federal and state law and not within the authority of the City").

### V.    CONCLUSION & PRAYER

For all these reasons, Plaintiffs request that the Court grant this Motion and render a final judgment in their favor. Plaintiffs further request such other relief to which they may be justly entitled.

Respectfully submitted,

By:*/s/ Bill Kroger*
    Bill Kroger
    State Bar No. 11729900
    James H. Barkley*
    State Bar No. 00787037
    Baker Botts L.L.P.
    One Shell Plaza
    910 Louisiana Street
    Houston, Texas 77002
    713.229.1736
    713.229.2836 (facsimile)
    bill.kroger@bakerbotts.com
    james.barkley@bakerbotts.com

    Thomas R. Phillips
    State Bar No. 00000022
    Gavin R. Villareal
    State Bar No. 24008211
    98 San Jacinto Boulevard, Suite 1500
    Austin, Texas 78701
    512.322.2500
    512.322.2501 (facsimile)
    tom.phillips@bakerbotts.com
    gavin.villareal@bakerbotts.com

ATTORNEYS FOR PLAINTIFFS
PERMIAN HIGHWAY PIPELINE, LLC
AND KINDER MORGAN TEXAS
PIPELINE, LLC

*admitted *pro hac vice*

## CERTIFICATE OF SERVICE

This certifies that, on August 19, 2019, a true and correct copy of the above and foregoing was electronically filed and served on Defendant City of Kyle, Texas as follows:

Matthew C. Powers
Mary A. Keeney
Guillermo Alarcon
GRAVES, DOUGHERTY, HEARON, & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, Texas 78701
mpowers@gdhm.com
mkeeney@gdhm.com
galarcon@gdhm.com

*Counsel for Defendant*

/s/ *Bill Kroger*
Bill Kroger

22